# 15-3117

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT, f/k/a TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND,

*Plaintiffs-Counter-Defendants-Appellees,*

TRAVELERS CASUALTY AND SURETY COMPANY,
f/k/a THE AETNA CASUALTY AND SURETY COMPANY,

*Plaintiffs-Counter-Defendant,*

(*Caption continued on inside cover*)

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PAGE PROOF REPLY BRIEF FOR DEFENDANTS-CROSS-
CLAIMANTS-COUNTER-CLAIMANTS-APPELLANTS
[REDACTED]

GEORGIA KAZAKIS
MARK W. MOSIER
ELLIOTT SCHULDER
AMIT R. VORA
COVINGTON & BURLING LLP
One CityCenter
850 10th Street, NW
Washington, DC 20001
(202) 662-6000

*Attorneys for Defendants-Cross-
Claimants-Counter-Claimants-
Appellants*

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
f/k/a TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

*Plaintiff,*

—against—

NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN
SYSTEMS CORPORATION,

*Defendants-Cross-Claimants-Counter-Claimants-Appellants,*

CENTURY INDEMNITY COMPANY, eventual successor in interest to
INSURANCE COMPANY OF NORTH AMERICA,

*Defendant-Cross-Defendant-Appellee.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

ARGUMENT ..................................................................................... 2

I.    Travelers Is Not Entitled to Summary Judgment on the NYSDEC Claim under Its General Liability Policies. ................................... 2

      A.    A Jury Could Find That Grumman Provided Timely Notice of NYSDEC's Claim. ....................................................... 2

            1.    A Jury Could Find That Grumman Satisfied Its Notice Obligation in 1984. ........................................... 2

            2.    A Jury Could Find That Subsequent Developments in the NYSDEC Action Were Part of the Same Claim. ...................... 5

      B.    A Jury Could Find That Travelers Waived Its Late-Notice Defense. ................................................................. 9

      C.    The "Voluntary Payments" Provision Does Not Support Affirmance ................................................................ 11

      D.    Grumman Cannot Be Denied Coverage Based on Pollution Exclusions. .............................................................. 13

            1.    Travelers' Focus on Long-Term Practices Is Misplaced. ........ 13

            2.    The Relevant Event Is Discharge into the Environment. ........ 15

            3.    Travelers' "Expected or Intended" Pollution Exclusion Does Not Bar Coverage. ............................................. 16

            4.    New York's Statutory Pollution Exclusion Does Not Bar Coverage. ............................................................ 21

            5.    Grumman May Obtain Coverage for Third-Party Releases. ............................................................... 31

II.    Century Is Not Entitled To Summary Judgment on the NYSDEC Claim. .......................................................................... 32

i

A. A Jury Could Find That Grumman Complied with Its Notice Obligations. .......................................................... 32

 1. Grumman Need Not Show It Made a "Deliberate Determination."................................................... 32

 2. Century Cannot Show That Grumman Should Have Known That Any Potential Liability Would Have Triggered Century's Policies. .................................. 34

 3. A Jury Could Find That Grumman Had a Reasonable Belief in Non-Liability............................................. 36

B. Grumman Did Not Forfeit Coverage By Providing Inadequate Notice of NYSDEC's Claim. ............................................ 38

C. Grumman's Notice of the PRP Letter Was Not Untimely as a Matter of Law. .................................................... 41

D. A Jury Could Find That Century Waived Its Notice Defenses.......... 43

III. Grumman Is Entitled to Coverage under Travelers' Environmental Hazard Policies. ............................................ 46

IV. A Jury Could Find that Grumman Is Entitled to Coverage on the Town of Oyster Bay Claim.................................... 48

A. Whether Grumman Provided Timely Notice Cannot Be Decided as a Matter of Law. ............................................ 49

B. The Evidence Is Sufficient to Support a Finding of Waiver............. 51

V. The Water Districts Did Not Assert Claims in the NYSDEC Action.......... 51

CONCLUSION ...................................................... 53

# TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

*A.H.A. Gen. Const., Inc. v. N.Y.C. Hous. Auth.*,
    92 N.Y.2d 20 (1998) ........................................................................................4

*Aiello v. Burns Intern. Sec. Servs. Corp.*,
    110 A.D.3d 234 (1st Dep't 2013) ...................................................................11

*Allstate Ins. Co. v. Moon*,
    89 A.D.2d 804 (4th Dep't 1982) .....................................................................40

*American Ins. Co. v. Fairchild Indus., Inc.*,
    56 F.3d 435 (2d Cir. 1995) .................................................................5, 6, 34

*Andy Warhol Found. for the Visual Arts, Inc. v. Fed. Ins. Co.*,
    189 F.3d 208 (2d Cir. 1999) ...........................................................................52

*Asbeka Indus. v. Travelers Indem. Co.*,
    831 F. Supp. 74 (E.D.N.Y. 1993) ...................................................................43

*Belt Painting Corp. v. TIG Ins. Co.*,
    100 N.Y.2d 377 (2003) .................................................................15, 16, 31

*Brooks v. Outboard Marine Corp.*,
    234 F.3d 89 (2d Cir. 2000) .............................................................................29

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*,
    302 F.3d 83 (2d Cir. 2002). ...........................................................................44

*Carolina Cas. Ins. Co. v. Ins. Co.*,
    595 F.2d 128 (3d Cir. 1979) .....................................................................21-22

*Cast Steel Prods., Inc. v. Admiral Ins. Co.*,
    348 F.3d 1298 (11th Cir. 2003) ...............................................................47, 48

*Castro v. United Container Mach. Grp.*,
    96 N.Y.2d 398 (2001) .....................................................................................22

*Century Indem. Co. v. Brooklyn Union Gas Co.*,
    58 A.D.3d 573 (1st Dep't 2009) .....................................................................34

*Century Indem. Co. v. Keyspan Corp.*,
2007 WL 1341264 (N.Y. Sup. Ct. May 7, 2007) ...............................................34

*Checkrite Ltd. v. Ill. Nat'l Ins. Co.*,
95 F. Supp. 2d 180 (S.D.N.Y. 2000) ...................................................................48

*City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*,
877 F.2d 1146 (2d Cir. 1989) ......................................................................16, 17

*City of New York v. Zurich Am. Ins. Co.*,
117 A.D.3d 474 (1st Dep't 2014) .......................................................................39

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
80 N.Y.2d 640 (1993) ................................................................................15, 16

*Crawford v. Franklin Credit Mgmt.*,
758 F.3d 473 (2d Cir. 2014) ..............................................................5, 7, 9, 36

*Daubert v. Merrell Dow Pharms, Inc.*,
509 U.S. 579 (1993) ...................................................................................26, 29

*Estee Lauder Inc. v. OneBeacon Ins. Grp., LLC*,
62 A.D.3d 33 (1st Dep't 2009) ...........................................................................44

*Fabozzi v. Lexington Ins. Co.*,
2016 WL 860280 (2d Cir. Mar. 7, 2016) ...........................................................14

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt.,*
*L.P.*, 7 N.Y.3d 96 (2006) ...................................................................................45

*Geisco, LLC v. Greater N.Y. Mutual Ins. Co.*,
44 A.D.3d 616 (2d Dep't 2007) ......................................................................4, 5

*Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins.*
*Co.*, 304 A.D.2d 334 (1st Dep't 2003) ...............................................................38

*Gussack Realty Co. v. Xerox Co.*,
224 F.3d 85 (2d Cir. 2000) .................................................................................29

*Hammersmith v. TIG Ins. Co.*,
480 F.3d 220 (3d Cir. 2007) ...............................................................................33

*Isadore Rosen & Sons, Inc. v. Sec. Mut. Ins. Co. of N.Y.*,
   31 N.Y.2d 342 (1972) ............................................................11, 12, 44

*Jenkins v. Burgos*,
   99 A.D.2d 217 (1st Dep't 1984) ........................................................42

*KeySpan Gas East Corp. v. Munich Reins. Am., Inc.*,
   23 N.Y.3d 583 (2014) ............................................................44, 45, 46

*Lavanant v. Gen. Accident Ins. Co. of Am.*,
   79 N.Y.2d 623 (1992) ........................................................................47

*Lexington Ins. Co. v. Sirius Am. Ins. Co.*,
   2014 WL 4646852 (N.Y. Sup. Ct. Sept. 15, 2014) ...........................11

*Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*,
   24 A.D.3d 172 (1st Dep't 2005) ............................................32, 33, 34

*Long Island Lighting Co. v. Am. Re-Ins. Co.*,
   123 A.D.3d 402 (1st Dep't 2014) ...............................................10, 46

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) ..............................................................28

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
   47 N.Y.2d 12 (1979) ....................................................................41, 42

*Miranda v. Aetna Cas. & Sur. Co.*,
   51 A.D.2d 1035 (2d Dep't 1976) ......................................................40

*Morris Park Contracting Corp. v. Nat'l Union Fire Ins. Co. of*
   *Pittsburgh, Pa.*, 33 A.D.3d 763 (2d Dep't 2006) ..............................33

*New York v. AMRO Realty Corp.*,
   936 F.2d 1420 (2d Cir. 1991) ............................................................16

*New York v. Ludlow's Sanitary Landfill, Inc.*,
   50 F. Supp. 2d 135 (N.D.N.Y. 1999).................................................7

*Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*,
   89 N.Y.2d 621 (1997) ...................................................... 13-14, 20, 27

*People v. Barnes*,
  26 N.Y.3d 986 (2015) ........................................................................22

*Powers Chemco, Inc. v. Fed. Ins. Co.*,
  74 N.Y.2d 910 (1989) .......................................................................16

*Readco, Inc. v. Marine Midland Bank*,
  81 F.3d 295 (2d. Cir. 1996) ..............................................................45

*Redding-Hunter, Inc. v. Aetna Cas. & Sur. Co.*,
  206 A.D.2d 805 (3d Dep't 1994).......................................................16

*Reynolds Metal Co. v. Aetna Cas. & Sur. Co.*,
  259 A.D.2d 195 (3d Dep't 1999)..........................................33, 34, 49

*Romano v. St. Paul Fire & Marine Ins. Co.*,
  65 A.D.2d 941 (4th Dep't 1978)..................................................43, 51

*S. & E. Motor Hire Corp. v. New York Indem. Co.*,
  255 N.Y. 69 (1930) ...........................................................................45

*Sorbara Construction Corp. v. AIU Ins. Co.*,
  11 N.Y.3d 805 (2008) .......................................................................40

*Technicon Elecs. Corp. v. Am. Home Assur. Co.*,
  74 N.Y.2d 66 (1989) .........................................................................16

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*,
  369 F.3d 102 (2d Cir. 2004) .......................................................39, 41

*Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*,
  146 F.3d 131 (2d Cir. 1998) .............................................................49

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
  571 F.3d 206 (2d Cir. 2009) .................................................26, 28, 29

*Zuchowicz v. United States*,
  140 F.3d 381 (2d Cir. 1998) .............................................................30

## Statutes, Regulations, and Rules

Comprehensive Environmental Response, Compensation, and
  Liability Act, 42 U.S.C. § 9601 *et seq.*.......................................................*passim*

N.Y. Ins. Law § 46 (1971) ...............................................................21, 23

Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ....................50

32 C.F.R.§ 7.203-22 (1971) .....................................................................24

32 C.F.R. § 10.301 (1971) .......................................................................24

Fed. R. Evid. 703 ...............................................................................26, 29

## INTRODUCTION

In granting summary judgment for Appellees Century and Travelers, the district court held that: (1) Appellants Northrop Grumman Corporation and Northrop Grumman Systems Corporation ("Grumman") must prove strict, rather than substantial, compliance with the policies' notice requirements; (2) Grumman must bear the consequences of Travelers' providing a bad address unless Travelers did so intentionally; (3) Grumman must prove prejudice to establish that the insurers waived their late-notice defenses; (4) Grumman cannot establish waiver based on testimony regarding Travelers' statements during a critical 1989 meeting; and (5) the term "financial responsibility" in the New York statutory pollution exclusion is a "term of art" to be construed against Grumman. The insurers do not even attempt to defend any of these holdings.

Given the number of holdings they do not defend, the insurers must argue that the judgment can be affirmed on other parts of the court's rulings or on alternative grounds not reached by the district court. These arguments fail. The district court's errors extend well beyond those conceded by the insurers, and the alternative grounds provide no basis for affirmance. The district court's judgment should be reversed and the case remanded for trial.

# ARGUMENT

## I. Travelers Is Not Entitled to Summary Judgment on the NYSDEC Claim under Its General Liability Policies.

### A. A Jury Could Find That Grumman Provided Timely Notice of NYSDEC's Claim.

Travelers contends that its policies required Grumman to notice—and then later re-notice—the environmental claim brought by the New York State Department of Environmental Conservation ("NYSDEC"). But a jury could find that Grumman satisfied its notice obligation shortly after NYSDEC asserted the claim, and that Grumman had no duty to re-notice the same claim.

### 1. A Jury Could Find That Grumman Satisfied Its Notice Obligation in 1984.

Travelers argues that no jury could find that Grumman fulfilled its obligation to provide notice of the NYSDEC claim because there is no evidence that, in January 1984, Travelers received a copy of the "potentially responsible party" letter ("PRP Letter") that NYSDEC sent to Grumman. This argument fails because it ignores: (1) the language in Travelers' policies; (2) that Travelers provided Grumman with a bad address; and (3) the evidence from which a jury could infer that Travelers received the PRP Letter.

*First*, Grumman's obligation was to send notice to Travelers, not to ensure that Travelers received it. A jury could find that Grumman fulfilled this obligation because its broker sent a copy of the PRP Letter to Travelers at an address

Travelers provided.  Grumman Br. 25-26.  Travelers responds to this argument only in a footnote, claiming that the argument is "based entirely on two sixty-year-old cases from Pennsylvania and Wisconsin."  Travelers Br. 39 n.9.  Not so.  The argument is based on the policy language, which required Grumman to "forward" the NYSDEC claim to Travelers.  SA__[DE552_26].  Because the term "forward" focuses on Grumman's actions, the provision was satisfied when Grumman's broker sent the notice.  Travelers does not respond to this point and offers no reason why the Court should impose additional obligations not found in the policies.[1]

*Second*, a jury could find that Travelers should bear the consequences of giving Grumman the wrong address.  The district court held that Grumman forfeited coverage by sending notice to an incorrect address provided by Travelers unless it could show that Travelers *intentionally* provided the wrong address.  SA__[DE552_61-62].  That view is unsupported by the law, Grumman Br. 26-27, and Travelers does not attempt to defend it.  According to Travelers, Grumman's assertion that Travelers provided a bad address "is a gross distortion of the record," but—in the very next sentence—Travelers *concedes that it provided the incorrect*

---

[1] The cases that Travelers cites do not support its argument.  Travelers Br. 38-39. Travelers cites no case in which a court held that policy language requiring the policyholder to send notice also obligates the policyholder to confirm the insurer received it.

*address*. Travelers Br. 40. Travelers attempts to dismiss the mistake as irrelevant because it provided the bad address in a letter regarding a different claim. *Id.* But Grumman's broker sent the PRP Letter just days after receiving Travelers' letter with the bad address. SA__[DE552_61-62]. Because Grumman's broker could reasonably assume that Travelers' address had not changed in a week, a jury could find that Travelers should bear the consequences of its mistake. *See, e.g.*, *A.H.A. Gen. Const., Inc. v. N.Y.C. Hous. Auth.*, 92 N.Y.2d 20, 31 (1998).[2]

*Third*, a jury could find that Travelers received the PRP Letter. The decision in *Geisco, LLC v. Greater New York Mutual Insurance Co.*, 44 A.D.3d 616 (2d Dep't 2007), compels this result. There, the court held that a jury could find that an insurer received notice sent to a wrong address because "the postal code was correct and there is no evidence in the record that the notice was returned to the sender." *Id.* at 617. Grumman presented even more evidence to support a finding that Travelers received notice here. Grumman Br. 27-29.

Attempting to distinguish *Geisco*, Travelers argues that it has more "affirmative evidence that it never received the letter" than the insurer in *Geisco*. This argument fails because Travelers cites no evidence to support it and because it ignores the summary judgment standard. The relevant question is whether

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Grumman presented sufficient evidence to support a finding that Travelers

received it. *See, e.g.*, *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 486 (2d

Cir. 2014). *Geisco* shows that Grumman did.

### 2. A Jury Could Find That Subsequent Developments in the NYSDEC Action Were Part of the Same Claim.

Travelers contends that, even if Grumman timely noticed the NYSDEC

claim in 1984, it later forfeited coverage for the administrative proceeding by not

re-noticing the claim when NYSDEC requested a "site-wide" investigation and

reclassified the site in 1986 and 1987, respectively, and when NYSDEC began

addressing contamination at the Bethpage Community Park in 2001. Travelers Br.

35-48. These arguments fail because a jury could find that NYSDEC asserted only

a single claim and Grumman provided notice of that claim in January 1984.[3]

Travelers contends that this Court's decision in *American Insurance Co. v.*

*Fairchild Industries, Inc.*, 56 F.3d 435 (2d Cir. 1995), demonstrates that NYSDEC

asserted a "new claim" when it requested a field investigation. Travelers Br. 35-

36. But *Fairchild* does not support Travelers' view that each step in a single,

ongoing  NYSDEC proceeding is a distinct claim creating separate notice

obligations. In *Fairchild*, the Court declined to decide whether NYSDEC's

original PRP letter constituted a claim because it was clear that NYSDEC had

---

[3] Century's similar arguments regarding the supposed "Park" claim, Century Br. 54-57, fail for the same reasons.

asserted a claim long before notice was given. 56 F.3d at 439-40. Nothing in *Fairchild* suggests that NYSDEC asserted multiple claims in that proceeding, or that—had the policyholder provided notice of the original PRP letter (like Grumman did here)—new notice obligations would have been created by subsequent developments in the proceeding. To the contrary, the Court expressly stated that NYSDEC's reclassification of the site—which was clearly an assertion of liability related to an earlier claim—was *not* a new claim, but rather was "more analogous to the adjudication of liability" for the original claim. *Id.*

Travelers also contends that Grumman was required to repeatedly notice the same NYSDEC claim because its policies require Grumman to "forward to the company every demand, notice, summons or other process received." Travelers Br. 36. Focusing on the word "every," Travelers ignores the significance of the terms that follow. The policy uses terms—such as summons and other types of "process" —that signify the beginning of adversarial proceedings. This language confirms that the notice obligation arises when a claim is first asserted, not every time a policyholder is threatened with liability in the course of a single proceeding. *Fairchild* does not require a different result.

Travelers contends that the PRP Letter could not constitute a claim by NYSDEC for "site-wide contamination" at Bethpage because the claim originally related only to "sludge drying beds." Travelers Br. 41-42. The district court

correctly rejected this argument, holding instead that the PRP Letter was broad enough "to capture groundwater contamination by TCE." SA__[DE554_15]. That ruling is compelled by the text of the PRP Letter, which explicitly asserts a claim for all contamination "at and around" the site. JA__[DE421_56.1] ¶ 320. Travelers makes no attempt to reconcile its argument with the text of the PRP Letter, which defines the scope of NYSDEC's claim. *See, e.g.*, *New York v. Ludlow's Sanitary Landfill, Inc.*, 50 F. Supp. 2d 135, 139 (N.D.N.Y. 1999).[4]

Travelers also argues that Grumman had a separate duty to provide notice of a supposed "Park" claim when contamination was discovered at the Park. Travelers Br. 43-48. Travelers contends that the record evidence refutes Grumman's argument that NYSDEC has only asserted a single claim, but Travelers makes this argument by reciting only those facts that support its view, while ignoring the facts that contradict it. *Id.* Summary judgment cannot be based on that approach. *Crawford*, 758 F.3d at 486.

Undisputed evidence demonstrates that NYSDEC is conducting a single administrative proceeding to compel remediation at both the Bethpage facility and

---

[4] Travelers cites Grumman's internal memorandum stating that NYSDEC's claim related to sludge drying beds, but it cites no authority suggesting that the scope of a claim is determined by the policyholder's initial view of the claim, not by the claim itself. ███████████████████████████████████████████

the Park. Upon discovering contamination at the Park, NYSDEC did not start a new proceeding; it treated the Park as an additional "operable unit" in the ongoing proceeding. Grumman Br. 29-31. Based on this evidence, a jury could find that NYSDEC asserted a single claim covering the entire Bethpage site.

Travelers does not dispute these facts. Instead, it relies on NYSDEC's statement that, in the 1980s, "Site No. 130003 as defined did not include the Bethpage Community Park." Travelers Br. 46. That statement does not help Travelers because the PRP Letter did not limit its claim to the area originally included in Site No. 130003; its claim covered contamination "around" the site and in the site's "environs." JA__[DE402_56.1] ¶ 184. Travelers adopts the district court's view that these words are meaningless "placeholder[s]," Travelers Br. 46, but it does not explain why a jury could not find that NYSDEC meant what it said: If contamination were found around the site, Grumman would be liable for that contamination as well.

Finally, Travelers contends that the statute of limitations bars coverage for the "Park" claim. Travelers Br. 84-86. The Court need not reach that issue because, as discussed above, there is no "Park" claim. Travelers' argument fails on the merits because the limitations period on a claim for breach of the duty to defend does not run until the underlying proceeding is complete, and the limitations period on an indemnity claim does not run until the duty is breached

8

and the policyholder incurs indemnity costs.  Grumman Br. 34-35.  The limitations period has not run because the NYSDEC proceeding is ongoing, and Grumman brought suit within six years of incurring indemnity costs.  *Id.*[5]

### B. A Jury Could Find That Travelers Waived Its Late-Notice Defense.

Two disputed fact issues preclude summary judgment on whether Travelers waived its late-notice defense.

*First*, a jury could find that Travelers waived the defense in writing.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ Travelers insists that it meant for the letters not to refer to the NYSDEC claim and that the express waivers were "typographical error[s]."  Travelers Br. 54.  But those are issues for a jury to resolve.  *Crawford*, 758 F.3d at 486 (court "must disregard all evidence favorable to the moving party that the jury is not required to believe").

---

[5] Travelers incorrectly states that Grumman has limited its notice arguments to Travelers' primary policies.  Travelers Br. 37 n.7.  The district court did not analyze the notice issues separately under the different policies; it held that notice was late under all policies for the same reasons.  SA__[DE552_57-66].  That holding is incorrect, for all policies, for the reasons discussed in this brief.

Travelers cites no case in which a court granted summary judgment by ignoring the sort of written waiver that Travelers made here.[6]

*Second*, a jury could find waiver based on the two-decade delay between when Travelers learned the basis for a late-notice defense and when Travelers asserted the defense. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████ This combination of knowledge and delay is sufficient to establish waiver. *Long Island Lighting Co. v. Am. Re-Ins. Co.*, 123 A.D.3d 402, 404 (1st Dep't 2014); *see also infra* Part II.D.

The district court held that evidence of the 1989 meeting could not support a finding of waiver because it would "convert oral notice into the equivalent of written notice." SA__[DE552_64-65]. The case law does not support this holding, and Travelers does not defend it. Instead, Travelers argues that it could not have knowingly waived a late-notice defense because Grumman did not provide sufficient information about the NYSDEC claim at the 1989 meeting. Travelers Br. 53. But a jury could find otherwise █████████████████████████

_____

[6] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████.  Grumman Br.

37.

Travelers fares no better in arguing that any waiver must be in writing.

Travelers Br. 55.  Travelers asserts that "New York law enforces contractual

provisions requiring written waivers."  *Id.*  But the question is not whether written

waiver provisions are enforceable; it is whether a party may chose not to enforce

the provision and instead waive a policy provision orally or by its conduct.  The

answer to that question is clear.  *Aiello v. Burns Intern. Sec. Servs. Corp.*, 110

A.D.3d 234, 245 (1st Dep't 2013) (It is "abundantly clear in New York that, even

where a contract specifically contains a nonwaiver clause and a provision stating

that it cannot be modified except by a writing, it can, nevertheless, be effectively

modified by … the parties' course of conduct.").[7]

### C.    The "Voluntary Payments" Provision Does Not Support Affirmance.

Travelers does not dispute that a policyholder may settle claims without the

insurer's consent when the insurer fails to provide a defense required under the

policy.  This principle applies "even though the policy purports to avoid liability

for settlements made without the insurer's consent."  *Isadore Rosen & Sons, Inc. v.*

---

[7] Travelers attempts to distinguish *Aiello* on the ground that it did not involve an insurance policy, Travelers Br. 55, but the same rule applies in insurance cases. *See, e.g.*, *Lexington Ins. Co. v. Sirius Am. Ins. Co.*, 2014 WL 4646852, at *9 (N.Y. Sup. Ct. Sept. 15, 2014).

*Sec. Mut. Ins. Co. of N.Y.*, 31 N.Y.2d 342, 347 (1972) (citation omitted and quotation marks omitted).

Travelers contends that this principle is inapplicable because Grumman began making payments related to the NYSDEC claim before Travelers could have breached its policy obligations. Travelers Br. 82-84. Travelers bases this argument on the notion that Grumman made the payments before providing notice of the claim to Travelers. *Id.* That argument depends entirely on Travelers' view that no jury could find that Grumman provided notice of the NYSDEC claim when it forwarded the PRP Letter in 1984. Because a jury could find that Grumman provided notice, *see supra* Part I.A., it could also find that Grumman did not need consent to make payments. *See Isadore Rosen*, 31 N.Y.2d at 347.

 Travelers again dismisses these waivers as "typographical error[s]," but a jury could find otherwise. *See supra* Part I.B.

The testimony that Travelers orally waived the provision at a meeting in August 1989 also supports a finding of waiver. The district court disregarded this testimony, holding that it was inadmissible hearsay, the waiver did not apply to

multiple payments, and the waiver must be in writing. SA__[DE552_68] n.26. Travelers does not defend the first two grounds; the third is contrary to New York law. *See supra* Part I.B. Finally, Travelers asserts that any waiver was limited to a different claim discussed at the 1989 meeting. Travelers Br. 84. But the evidence is sufficient to permit a jury to find that the parties also discussed the NYSDEC claim at the meeting. Grumman Br. 37.

### D. Grumman Cannot Be Denied Coverage Based on Pollution Exclusions.

#### 1. Travelers' Focus on Long-Term Practices Is Misplaced.

Travelers portrays the cleanup at Bethpage as resulting from "Grumman's long-term use of recharge basins, sludge drying beds, sprayed waste oil, and the like." Travelers Br. 67. Citing nothing, Travelers baldly asserts that "[t]hese polluting discharges … collectively led to the massive contamination at the [f]acility and to the groundwater" and that no sudden accident was "serious enough to cause the extraordinary contamination" at Bethpage. *Id.* at 68. The district court correctly declined to take issue with whether the discrete events Grumman identified were "serious enough," and correctly declined to deny coverage based solely on the purported "long-term" practices.

*First*, Grumman is entitled to coverage if at least one unexpected and unintended (or sudden and accidental) event occurred in "significant quantity" so as to have "some potentially damaging environmental effect." *Northville Indus.*

*Corp. v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 621, 634 (1997); *see also Fabozzi v. Lexington Ins. Co.*, 2016 WL 860280, at *3 (2d Cir. Mar. 7, 2016) (recognizing the "settled principle" that "concurrent operation" of an excluded peril "will not necessarily defeat coverage").  The district court accepted this principle, and Travelers does not dispute it.  Accordingly, whether excluded events caused some contamination is irrelevant.  Summary judgment was warranted only if—as the district court incorrectly concluded—"all" of the "events" at issue "were to be expected in one way or another."  SA__[DE552_55].

    *Second*, a jury could disagree with Travelers' unsupported assertion that Grumman's long-term practices caused "massive contamination."  Travelers Br. 67-68.  ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████  Travelers did not challenge this evidence.  The district court did not exclude it.[8]

---

[8] Travelers also misstates the evidence of certain "long-term" practices.  For example, Grumman never poured "pure" TCE into pits. Travelers Br. 22-23.  The liquid waste cited by Travelers "most likely contained … small amounts" of diluted TCE.  SA_[DE553_3].  ████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████

### 2.      The Relevant Event Is Discharge into the Environment.

In applying the pollution exclusions, the district court held that "the legal focus is on the act of discharge into whatever container was being used." SA__[DE553_15].  This holding was critical to the court's analysis because Grumman intentionally placed chemicals into tanks, drums, and degreaser chambers for use in manufacturing airplanes, but those chemicals sometimes accidentally spilled from the containers into the environment.  By focusing solely on the intentional placement of chemicals into containers, the court disregarded the evidence that the chemicals accidently escaped into the environment.

Travelers cannot reconcile the district court's "container" rule with *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377 (2003).  There, the New York Court of Appeals held that the terms used in Travelers' pollution exclusion— "discharge," "seepage," "release," and "escape"—are terms of art, which "necessarily involve discharge or release into land, atmosphere or water."  *Id.* at 388.  The container rule is even more at odds with the statutory pollution exclusion, which expressly states that the "sudden and accidental" releases must be "into or upon land, the atmosphere or any water course or body of water." SA__[DE552_27]; *see also Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 654 (1993) (statutory pollution exclusion applies only to "broadly dispersed environmental pollution").

Travelers incorrectly contends that *Powers Chemco, Inc. v. Fed. Ins. Co.*, 74 N.Y.2d 910 (1989), supports the container rule. Travelers Br. 81. That three-paragraph decision interpreted no policy language; it simply held—without analysis—that a policyholder intentionally discharged waste when it buried drums in a landfill. *Id.* at 911. This decision does not support the container rule because the drums there were the waste being discharged—not storage containers like they are here. In any event, even if *Powers Chemco* applied the container rule, it would not help Travelers. *Rapid Am.* and *Belt Painting* were decided after *Powers Chemco*, and thus control.[9]

### 3. Travelers' "Expected or Intended" Pollution Exclusion Does Not Bar Coverage.

#### a) The District Court's Broad Interpretation of "Expected" Should Be Rejected.

In construing a liability policy's definition of "occurrence," this Court refused to give the term "expected" its broadest meaning. *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149-50 (2d Cir. 1989). As the

---

[9] The other cases that Travelers cites similarly provide no support for the container rule. Travelers Br. 62-70. Those cases involved the intentional disposal of waste, not the inadvertent escape of valuable chemicals stored for use in manufacturing equipment. *See, e.g.*, *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1427 (2d Cir. 1991) (intentional disposal of waste solvent into drain); *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 72-74 (1989) (intentional disposal of waste chemicals into river); *Redding-Hunter, Inc. v. Aetna Cas. & Sur. Co.*, 206 A.D.2d 805, 807 (3d Dep't 1994) (intentional disposal of scrap waste).

16

Court acknowledged, if "expected" were interpreted broadly, "virtually no recovery could be had on insurance. This is so since it is mishaps that are 'expected'—taken in its broadest sense—that are insured against." *Id.* Rather than rendering the policy's coverage meaningless, the Court interpreted "expected" narrowly, holding that injury or damage is "expected" only if it "would flow directly and immediately from [the policyholder's] intentional act." *Id.*

The district court refused to give "expected" the same narrow interpretation in Travelers' pollution exclusion, because the occurrence definition excludes coverage if *damage* was "expected," and the pollution exclusion excludes coverage if the *discharge* of contaminants was "expected." SA__[DE552_35-38]. Based on this distinction, the district court interpreted "expected" in its broadest sense, just as *Johnstown* had cautioned against, *id.,* and concluded that all the relevant releases "were to be expected in one way or another." SA__[DE552_55].

Travelers relies on the same distinction between the occurrence definition and the pollution exclusion, but Grumman has never argued that the provisions are identical in all respects. The point is that both provisions use the same phrase ("expected or intended"), and those specific terms—not the entire provisions— should be given the same meaning. Grumman Br. 44-46. Thus, a discharge is "expected" only if it "would flow directly and immediately from [the policyholder's] intentional act." *Johnstown*, 877 F.2d at 1149-50. On this reading,

it is untenable to say—as the district court did—that a policyholder "expected" that "a forklift would accidentally puncture a drum." SA__[DE552_24] n.10. If an event were accidental, then it necessarily was not expected.

> **b)** **A Jury Could Find That Grumman Incurred Liability for Unexpected and Unintended Releases.**

A jury could find unexpected and unintended releases of TCE from Tank #10, degreasers, and punctured drums, and of Freon from the Park's ice skating rink. Grumman Br. 46-47. None of these releases involved waste disposal. They involved valuable chemicals—TCE and Freon—used in manufacturing airplanes and cooling an ice skating rink. *Id.* at 46-49. The district court held that these releases were expected, but this holding was based on the court's view that the "legal focus" must be on placement of chemicals into containers and on its overbroad interpretation of "expected." *Id.* Travelers' defense of these rulings fails.

**Tank #10.** Travelers' discussion of Tank #10 focuses on whether the release of TCE was sudden. Travelers Br. 71-74. That argument is incorrect. *See infra* Part I.D.4.b. It is also irrelevant under the policies with "expected or intended" exclusions. Travelers' sole argument that Grumman "expected or intended" the Tank #10 release is that "[c]ourts have found that companies may be aware that they are discharging a pollutant yet knowingly maintain the same practice—and the discharges are neither 'accidental' nor 'unexpected.'" Travelers

18

Br. 74.  But whether Grumman "knowingly maintained the same practice" after learning that Tank #10 was leaking is a fact question for the jury.  ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████

**Degreasers**.  Travelers does not defend the district court's view that Grumman "expected" welds on the degreasers to fail and release TCE.  Instead, it presents a new theory for why no coverage exists for these accidental releases.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ This argument fails because the pollution exclusion focuses on the initial release of contaminants into the environment.  *See supra* Part I.D.2.  ████████████████████████████

██████████████████████████████████████████████████

████████

**Punctured Drum**.  Travelers does not defend the district court's implausible view that Grumman must have "expected" that "a forklift would accidentally puncture a drum."  SA__[DE552_24] n.10.  ██████████████████████████

██████████████████████████████████████████████████

19

██████████████████████  But the punctured drums need not explain all

contamination at Bethpage.  They need only have resulted in a "significant

discharge of pollutants" that had "some potentially damaging environmental

effect."  *Northville*, 89 N.Y.2d at 634-35.  ████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████

**Park-Related Releases.**  Travelers does not dispute that Freon was released

from the ice skating rink, or that a jury could find that those releases were

unexpected and unintended.  Instead, Travelers contends that Grumman cannot

obtain coverage for releases that occurred after Grumman conveyed the Park to the

Town of Oyster Bay ("TOB").  Travelers Br. 79.  Travelers cites no policy

language imposing such a limitation, and none exists.  Travelers also contends that

coverage is unavailable for contamination arising from waste temporarily placed

into clay-lined impoundments, because no evidence shows that the impoundments

were lined with clay.  *Id.* at 80.  ████████████████████████████

███████████████████████████████████████████

20

**4.    New York's Statutory Pollution Exclusion Does Not Bar Coverage.**

**a)    The New York Statute Does Not Apply.**

1.  New York's statutory pollution exclusion, in effect from 1971 until 1982, did not apply to insurance policies "purchased to satisfy the financial responsibility requirements of any federal law."  N.Y. Ins. Law § 46(13)-(14) (1971).  The district court held that this pollution exclusion must be read into certain Grumman policies, because the phrase "financial responsibility" is a "term of art" that does not encompass Grumman's policies.  SA__[DE234_21-24].  Travelers does not defend this rationale.  Instead, it offers other reasons why "financial responsibility" should not be given its ordinary meaning.  None has merit.

*First*, Travelers urges the Court to adopt a magic-words test, under which a law imposes a "financial responsibility requirement" only if it "use[s] the term 'financial responsibility.'"  Travelers Br. 58.  Under this approach, and in contrast to the district court's "term of art" rationale, the meaning of the phrase "financial responsibility" is irrelevant.  Rather, the Court need only search federal law for the phrase "financial responsibility."  If that exact phrase is found, then the federal law imposes a "financial responsibility requirement"; if the phrase is not found, then no such requirement exists.  Travelers cites no authority for this method of statutory interpretation.  *See, e.g.*, *Carolina Cas. Ins. Co. v. Ins. Co.*, 595 F.2d 128, 136 (3d

Cir. 1979) (describing law as imposing "financial responsibility" requirement even though law did not use that phrase).

*Second*, Travelers contends that the term "financial responsibility" must be interpreted narrowly based on the statute's legislative history. But legislative history cannot be used to give the term a "forced or unnatural interpretation[]." *Castro v. United Container Mach. Grp.*, 96 N.Y.2d 398, 401 (2001).[10] Nor does the legislative history support departing from the text's plain meaning. The legislative history describes the exception as covering "policies issued to fulfill requirements of Federal law," and as ensuring "that policies which must be purchased pursuant to Federal law by corporations engaged in certain regulated activities … would be available in New York." JA__(DE83_Ex.65_ 7). This language shows that "financial responsibility requirement" and "requirements of Federal law" were understood as interchangeable phrases. The legislative history also states that a broad exception was necessary to "prevent a conflict between State and Federal requirements with regard to liability insurance for industrial corporations." *Id.* Thus, although compliance with "such federal laws as the Water Quality Improvement Act" was one reason for adopting the exception,

---

[10] Travelers' assertion that legislative history should be consulted even when statutory text is clear runs contrary to many New York Court of Appeals decisions. *See, e.g.*, *People v. Barnes*, 26 N.Y.3d 986, 989-90 (2015).

SA__[DE234_23], the legislature had good reason to enact a broader provision encompassing the "requirements of *any* federal law." N.Y. Ins. Law § 46(13) (1971) (emphasis added).

*Third*, Travelers speculates that giving the exception its plain meaning would "thwart" the statute's purpose and "create a gaping hole in the pollution exclusion." Travelers Br. 61-62. Not so. Travelers fails to account for the exception's broad, preemption-avoiding purpose, and offers no evidence that the exception would apply to a large number of businesses if given its ordinary meaning. On the contrary, the exception's natural meaning encompasses a modest number of policies: those that were issued between 1971 and 1982 and were required to be purchased by federal law. Even if *every* federal agency required insurance on *every* one of its contracts, the pollution exclusion would still apply to state contractors and the countless private businesses *not* engaged in government contracting.

2.  Travelers also argues that the Court can affirm on the alternative ground that federal law did not require Grumman to purchase the policies at issue. Travelers Br. 60-61. The district court correctly refused to rule for Travelers on this ground because a jury could find that Grumman was required to purchase the policies.

23

Federal regulations required defense contractors "to carry insurance …

[w]here commingling of property, type of operations, circumstances of ownership,

or conditions of the contract ma[d]e insurance reasonably necessary for the

protection of the Government." 32 C.F.R. § 10.301(c) (1971);

JA__[DE83_Scanlon_Exs.6a-11b].



Travelers ignores this evidence and focuses on a different regulation, 32

C.F.R.§ 7.203-22 (1971), which Travelers argues required Grumman to purchase

general liability insurance only to cover bodily injury, not property damage.

Travelers Br. 60-61. Even if Travelers were correct about the meaning of this

provision, it would be irrelevant because Grumman was required to purchase

insurance under 32 C.F.R. § 10.301(c). But Travelers is not correct. The statutory

exception addresses insurance "*[p]olicies*," not insurance *coverage*.

---

11 ████████████████████████████

SA__[DE234_15]. It is undisputed that Grumman was required to purchase the contested policies to obtain coverage for bodily injury liability claims, and that the general liability policies used by insurers at the time also included property damage coverage. JA__[DE83_Scanlon_Exs.28-29].[12]

### b) A Jury Could Find That Numerous Releases Were Sudden and Accidental.

Grumman presented testimony from three experts— Dr. Jean Bigoney (metallurgist), and Dr. David Langseth and Craig Robertson (hydrogeologist-engineers)—to establish that numerous releases of TCE and other chemicals were "sudden and accidental." Given that Travelers sought to exclude the testimony of only one of those experts, the district court should have denied Travelers' summary judgment motion based on the testimony of the remaining two experts. Instead, the court granted the motion to exclude Bigoney's opinions and then excluded *sua sponte* Langseth's and Robertson's testimony. Grumman Br. 56-57. That was an abuse of discretion.

Travelers adopts the district court's view that expert testimony can be excluded if the expert was "not a percipient witness." SA__[DE552_54]. That is incorrect. An expert need not be an eyewitness to opine on issues within his

---

[12] Travelers' concern that giving the statute its plain meaning will lead to "perverse results" is unfounded. Travelers Br. 61. No evidence suggests that any policyholder purchased a workers compensation policy that also provided property damage liability coverage while the New York statute was in effect.

expertise. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592 (1993) (citing Fed. R. Evid. 703).

Travelers also defends the district court's holding that the experts' testimony was "speculative" and "conjectural" because the experts relied on assumptions to support their opinions. SA__[DE529_18-19]; SA__[DE552_48-49, 53-54]; SA__[DE553_13] n.3. But to exclude an expert opinion on this ground, the expert's assumptions must be "so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009). (citation and quotation marks omitted). "[O]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* (citation and quotation marks omitted).

Travelers does not acknowledge this case law, much less attempt to show that the experts based their opinions on assumptions "so unrealistic and contradictory as to suggest bad faith." *Id.* Nor could Travelers make this showing. As discussed below, the experts' opinions were based on evidence and reasonable assumptions based on that evidence.

**Tank #10.** Travelers contends that the Tank #10 leak could not have been "sudden" because it took Grumman two or three years to discover it. Travelers Br. 71. But a release can be "sudden," even if it is not immediately discovered.

26

*Northville*, 89 N.Y.2d at 634. The focus is on the "initial release of the pollutant," which must involve a "discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect." *Id.*[13]

Based on Langseth's testimony, a jury could find that the initial release from Tank #10 involved a significant quantity of TCE. Travelers contends that this testimony was properly excluded because Langseth did not witness the release or examine the tank. There is no requirement that Langseth witness an event that happened forty years ago or that he examine a tank that was long ago destroyed. *See supra* p. 25-26. Travelers also contends that Langseth's opinions on the rate of discharge from Tank #10 are "rank speculation" and not based on scholarly literature. Travelers Br. 73. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████ Because Langseth's opinions were based on evidence, reasonable assumptions, and reliable methodology, they should

---

[13] Travelers' insistence that the tank leaked for years is not supported by the evidence. As the district court acknowledged, the testimony cited by Travelers is inconclusive. SA__[DE552_51].

not have been excluded. *Zerega*, 571 F.3d at 213-14; *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043-44 (2d Cir. 1995) (expert's alleged "lack of knowledge" and "lack of textual authority" goes to weight of evidence, not to admissibility).

Nor can Travelers defend the exclusion of Dr. Bigoney's testimony. Bigoney provided additional evidence that the Tank #10 leak was sudden by opining that the leak likely resulted from a weld failure, not gradual corrosion. JA__[DE493_Bosset_Ex.A_2, 6]. Travelers incorrectly contends that this opinion was "based on groundless assumptions." Travelers Br. 72. Bigoney's opinions on the tank's construction were grounded in the record evidence—Tank #10 was made of steel, was installed in 1970, ██████████████████████████ ██, was vertically positioned, and stored 4,000 gallons of TCE—and on contemporaneous guidance regarding above-ground tank construction. JA__[DE493_Bosset_Ex.A_2-4]. And her opinion on the nature of the leak was grounded in the evidence that Tank #10 failed shortly after installation. *Id.* Bigoney concluded that a weld failure likely caused the leak because corrosion could not cause a leak so quickly. JA__[ DE493_Bosset_Ex.A_5-6]. Because her

opinions were based on evidence, reasonable assumptions, and reliable methodology, they should not have been excluded.  *Zerega*, 571 F.3d at 213-14.[14]

**Other Facility Releases.**  Langseth also testified that numerous other accidental releases—including the releases when a weld on a degreaser failed—resulted in sudden discharges of substantial amounts of TCE.  JA__[DE421_56.1] ¶¶ 307-17.  The district court held that Langseth could not testify about these releases because he did not see them happen.  SA__[DE552_54].  Yet, experts routinely testify about accidents that they did not personally observe but that they can explain by drawing on their expertise.  Federal Rule of Evidence 703 presumes that an expert will perform this function.  *Gussack Realty Co. v. Xerox Co.*, 224 F.3d 85, 94-95 (2d Cir. 2000).

Travelers contends that Langseth's testimony was properly excluded because his "proffered 'opinions' are not facts."  Travelers Br. 74-75.  Travelers faults Langseth for opining on what "likely" happened, rather than stating with

---

[14] Travelers incorrectly contends that *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 90-92 (2d Cir. 2000), supports the district court's decision.  Travelers Br. 72-73.  *Brooks* does not help Travelers because the Court did not hold that an expert must always inspect the object involved in any accident.  Rather, the Court faulted the expert in *Brooks* for not conducting an inspection because the objects from the accident could have been inspected.  *Id.* at 90-92.  The Court did not suggest that an expert should be faulted for not examining unavailable materials like Tank #10 (which failed forty years ago and was destroyed), or non-existent replicas or photographs of it—especially where the expert's methodology is scientifically reliable and testable.  *Cf. Daubert*, 509 U.S. at 593.

absolute certainty what transpired four decades earlier. *Id.* No expert's opinions are "facts"; they are opinions. And there is nothing improper about a scientist stating his opinions in probabilistic terms. *Zuchowicz v. United States*, 140 F.3d 381, 385-87 (2d Cir. 1998).

**Ice Rink.** The district court excluded *sua sponte* the testimony of two Grumman experts who opined that the Freon releases from the refrigeration system at the ice rink were substantial and abrupt, thus satisfying the suddenness requirement. SA__[DE553_13] n.3. The district court excluded the opinions because they purportedly conflicted with a percipient witness's testimony. *Id.* Even if that were correct, the jury should be allowed to decide whether to believe the experts or the percipient witness. But the percipient-witness testimony did not conflict with the expert opinions. Grumman Br. 62-63. █████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

███████████ Travelers has no substantive response to this point; it simply states that

the district court correctly treated the evidence as conflicting. Travelers Br. 80 n.22.[15]

### 5. Grumman May Obtain Coverage for Third-Party Releases.

The district court refused to consider evidence that Grumman's liability is also based on discharges by the Hooker Chemical Co. and the TOB, and instead held that Grumman could obtain coverage only for liability arising from its own contamination. SA__[DE552_48]; SA__[DE553_13]. Travelers does not defend the district court's reasoning. Instead, it concedes that Grumman could obtain coverage for third-party releases if the third party did not expect or intend the discharge. Travelers Br. 76.

Travelers made this argument in the district court, and the court correctly declined to adopt it. Travelers did not carry its burden of showing that all the significant releases by Hooker and the TOB were expected or intended. *See Belt Painting*, 100 N.Y.2d at 383 (insurer has burden of proving applicability of expected-or-intended exclusion). Nor can the argument be squared with the policy language. Whether the release was unexpected and unintended from the standpoint

---

[15] Travelers asserts that the Freon contamination is insubstantial and that Grumman is not remediating it. Travelers Br. 61. ███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

of the third party is relevant only if liability is imposed on Grumman for the acts or omissions of that party. SA__[DE552_27-28]. Grumman is not facing vicarious liability for the actions taken by Hooker or the TOB. It faces independent liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*., based on its status as an owner and operator of the Bethpage site. Grumman Br. 67.

## II. Century Is Not Entitled To Summary Judgment on the NYSDEC Claim.

### A. A Jury Could Find That Grumman Complied with Its Notice Obligations.

#### 1. Grumman Need Not Show It Made a "Deliberate Determination."

Century urges this Court to affirm the district court's late-notice of occurrence ruling without considering the grounds on which the court decided the issue. According to Century, this Court should affirm on the alternative ground that Grumman cannot prove it had a reasonable belief of non-liability because Grumman presented no evidence that it made a "deliberate determination" on that issue in the 1970s. Century Br. 28-29. This argument fails.

Century's sole authority for this argument is *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 24 A.D.3d 172, 173 (1st Dep't 2005) ("*LILCO*"). But *LILCO* cited no authority for requiring evidence of a "deliberate determination," and then-existing precedent demonstrated that no such showing

was required.  *See, e.g.*, *Reynolds Metal Co. v. Aetna Cas. & Sur. Co.*, 259 A.D.2d 195, 201 (3d Dep't 1999).  The *Reynolds Metal* court held that a jury could find that a policyholder had a good-faith belief in non-liability based on objective evidence of the relevant circumstances existing at the time.  *Id.*  The court did not require evidence that the policyholder had made a "deliberate determination" of non-liability to justify not providing notice.

Recent decisions have rejected *LILCO* and have continued to follow *Reynolds Metal*.  In *Morris Park Contracting Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 33 A.D.3d 763 (2d Dep't 2006), the court followed *Reynolds Metal* and held that a jury could find that the policyholder had a good-faith belief in non-liability without requiring evidence of a "deliberate determination."  *Id.* at 766-67.  Likewise, in *Hammersmith v. TIG Insurance Co.*, 480 F.3d 220 (3d Cir. 2007), the Third Circuit, applying New York law, similarly refused to apply *LILCO*'s "deliberate determination" language.  *Id.* at 239-41.  After reviewing *Reynolds Metal*, *LILCO*, and *Morris Park*, the Third Circuit predicted that the New York Court of Appeals would follow *Morris Park*, and thus held that the policyholder presented sufficient evidence on which a jury could find a good-faith belief in non-liability, despite having no evidence of a "deliberate determination."  *Id.*

33

Century fails to mention that the First Department—the court that issued *LILCO*—has already rejected Century's reading of *LILCO*. *See Century Indem. Co. v. Brooklyn Union Gas Co.*, 58 A.D.3d 573 (1st Dep't 2009). Noting the tension between *LILCO* and *Reynolds Metal*, the trial court in that case followed *Reynolds Metal* and held that a jury could find that the policyholder had a good-faith belief in non-liability even without evidence of a "deliberate determination." *Century Indem. Co. v. Keyspan Corp.*, 2007 WL 1341264, at *10 (N.Y. Sup. Ct. May 7, 2007). On appeal, Century argued that this decision conflicted with *LILCO*, but the First Department—citing *Reynolds Metal*—affirmed the holding and refused to require evidence of a "deliberate determination" to establish a good-faith belief in non-liability. *Brooklyn*, 58 A.D.3d at 574.

> **2. Century Cannot Show That Grumman Should Have Known That Any Potential Liability Would Have Triggered Century's Policies.**

Century has no response to the following critical flaw in the district court's analysis: by the late 1970s, when Grumman supposedly should have known it would face liability for TCE contamination, Century had not issued policies to Grumman for a decade. This fact is critical because Grumman was obligated to notify Century only if it faced liability covered under Century's policies. *See, e.g.*, *Fairchild*, 56 F.3d at 439 (notice-of-occurrence provision not triggered where

policyholder "has a good faith and reasonable belief that no liability *covered by the policy* will result" (emphasis added)).

Century focuses on attempting to show that, by the late 1970s, Grumman should have known it would face liability for TCE contamination. This argument fails on its own terms—*see infra* Part II.A.3—but it also misses the point. The relevant question is not whether Grumman could be liable at all for TCE contamination, but whether Grumman reasonably believed it faced liability for accidents or occurrences during Century's policy periods.

A jury could answer that question in the negative. Given the state of the law in the 1970s, Grumman could have reasonably believed that it would not face any liability covered by Century's policies. In the 1970s, prior to CERCLA's enactment, a third party could sue Grumman only by bringing tort claims requiring proof that Grumman had released the contaminants that caused the environmental damage. Grumman Br. 67-68. Century cannot explain how a third party could have brought a tort claim based on conduct allegedly occurring more than a decade earlier when its policies were in effect, █████████████████████████████ ████████████████████████████████████████████ ███████████████████████████.

Century suggests that Grumman's belief in non-liability ended when CERCLA was enacted. Century Br. 35. But the theoretical possibility of a

35

CERCLA suit did not create a notice obligation. Grumman's belief in non-liability remained reasonable until it had reason to think that a third party would bring a CERCLA claim. Century, like the district court, does not dispute that Grumman's historical waste-handling practices were lawful. Century is dismissive of this evidence, but it is highly relevant because it shows that Grumman had no reason to think that the regulators, or another third party, would bring a CERCLA claim given Grumman's long history of regulatory compliance. Grumman Br. 67.

### 3. A Jury Could Find That Grumman Had a Reasonable Belief in Non-Liability.

Century also fails to show that Grumman's belief in non-liability was unreasonable. Century does not address the evidence in the light most favorable to Grumman, as required on summary judgment. *Crawford*, 758 F.3d at 486. Instead, it recites only the evidence that purportedly supports its view while ignoring substantial evidence showing that Grumman's belief was reasonable.

Century contends that Grumman could not have reasonably believed that Hooker was solely responsible for the contamination because some evidence suggested that both Grumman and Hooker were responsible. Century Br. 35-38. But substantial evidence exists—█████████████████████████████ ██████████████████████████████████████ ████████████████████████████ on which a jury could find that Grumman reasonably believed that Hooker was solely responsible. Grumman Br.

36

68-70.  That *other* evidence purportedly suggests that Hooker and Grumman might *both* be responsible simply means that the jury must resolve a factual dispute.



Century points to a November 1977 letter from the Bethpage Water District ("BWD"), asserting that Grumman was responsible for water contamination. Century Br. 33-34.  Nothing in the letter suggested that the BWD would bring a

---

16 

claim against Grumman for conduct or events in 1968 or earlier when Century's policies were in effect. Century does not dispute this point. Nor can Century deny that the BWD abandoned its inquiry when Grumman requested proof that it had contributed to the contamination. Century disputes BWD's reason for abandoning its inquiry, ███████████████████████████████████████ ████████████████████████████████. Grumman Br. 71-72.

### B. Grumman Did Not Forfeit Coverage By Providing Inadequate Notice of NYSDEC's Claim.

Century does not deny that this case is the first in which a policyholder was held to have provided inadequate notice as a matter of law when it provided its insurer with a copy of the actual claim for which coverage was sought. The district court reached this unprecedented result because it applied the wrong legal standard, requiring strict compliance with the policy's notice requirements, even though the law is clear that substantial compliance suffices.

1. Century does not defend the district court's refusal to apply the "substantial compliance" doctrine. The district court held that this doctrine is inapplicable because it "refers to the form in which a proof of loss is given." SA__[DE554_15.] But "[n]otice requirements are to be liberally construed in favor of the insured, with substantial, rather than strict, compliance being adequate." *Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 304 A.D.2d 334, 335-36 (1st Dep't 2003).

38

Century instead argues that Grumman did not provide adequate notice "under any standard." Century Br. 45. But Century does not even attempt to show that Grumman's notice was inadequate under the substantial compliance standard. Century recites at length the inconsistencies between the actual claim asserted by NYSDEC and the information in the cover letter and accompanying memorandum that was sent to Century. *Id.* at 43-45. But a sophisticated insurer like Century would have understood that Grumman's potential liability is determined by the scope of the claim asserted against it, and not by internal memoranda discussing that claim. In any event, the case law is clear that a policyholder's notice is not deemed inadequate because it contains "inconsistent information." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 108 n.5 (2d Cir. 2004) ("[i]nconsistent information is information nonetheless," and it is incumbent on the insurer "to clear up any uncertainty"); *City of New York v. Zurich Am. Ins. Co.*, 117 A.D.3d 474, 475 (1st Dep't 2014). Century has no response to this point.

2. Century also fails to show that Grumman's notice was defective because Century was carbon copied on a letter to Travelers. Century's contention that the notice was inadequate because it was "directed to a different insurer," Century Br. 41, is incorrect. Grumman's broker sent the PRP Letter to both Travelers and Century, and it is undisputed that Century received the Letter. Grumman Br. 14-15. To the extent Century argues that a recipient's name must appear on the "to:"

39

line rather than the "cc:" line for notice to be sufficient, the argument conflicts with New York precedent. *Id.* at 73-74.[17] Century does not cite a single case finding notice inadequate merely because it was transmitted by carbon copy.

Contrary to Century's assertion, *Sorbara Construction Corp. v. AIU Insurance Co.*, 11 N.Y.3d 805 (2008), does not support the district court's decision. *Sorbara* held that when a party has two unrelated types of insurance coverage, separate notice is required for each. *Id.* at 806. That rule is inapplicable here because Century issued only general liability policies to Grumman and hence could only have understood Grumman's notice as pertaining to the policies at issue. Grumman Br. 74-75. *Sorbara* cannot be read so broadly as to require a policyholder to provide the insurer with a list of every policy implicated. This misreading of *Sorbara* conflicts with the notice case law, which requires only substantial compliance, and with Century's policies, which impose no such requirement.

3. Century's assertion that Grumman failed to provide all "reasonably obtainable information" is meritless. Century Br. 45-46. This argument does not

---

[17] Century's quibble that *Allstate Insurance Co. v. Moon*, 89 A.D.2d 804 (4th Dep't 1982), and *Miranda v. Aetna Casualty & Surety Co.*, 51 A.D.2d 1035 (2d Dep't 1976), involved notice sent by an insurer to a third-party claimant is immaterial. What matters is that the *principle* adopted in those cases—notice by carbon copy is adequate—applies equally to notice sent by an insured to its insurer.

provide an alternative ground for affirmance because Century did not move for summary judgment on this ground, and thus the record does not support it. In any event, a jury could find that Grumman substantially complied with its notice obligations by providing Century a copy of the claim, and that the claim was broad enough to "capture groundwater contamination by TCE." SA__[DE554_15]. Had Century been confused by this notice or wanted more information, it could have followed up with Grumman. Century's failure to do so is fatal to its objection. *U.S. Underwriters*, 369 F.3d at 108 n.5.

### C. Grumman's Notice of the PRP Letter Was Not Untimely as a Matter of Law.

Century did not move for summary judgment on the ground that Grumman's notice of the NYSDEC claim was late. The district court nevertheless asserted the defense on Century's behalf, holding that Grumman's notice was late as a matter of law. Century's attempt to defend that ruling fails.

Century first argues that Grumman's notice was late because delays of one to two months have been held unreasonable, and here 48 days passed before Grumman provided notice. Century Br. 46. But Century ignores the fact that significantly longer delays—including delays of more than seven months—have been held reasonable as a matter of law. *See, e.g.*, *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 19 (1979). More fundamentally, Century ignores that New York law makes clear that a "policy's temporal requirement"

*cannot* "be measured simply by how long it was before written notification came forth." *Id.*

Grumman's notice was timely if it was "given within a reasonable time under the circumstances." *Jenkins v. Burgos*, 99 A.D.2d 217, 219-20 (1st Dep't 1984). The "reasonableness" of the timing for providing notice is generally a fact question for the jury. *Id.* That is true here, where Grumman received the PRP Letter shortly before the end-of-year holidays, Grumman provided notice the following month, and the notice was for a proceeding that has unfolded slowly over more than 30 years. Grumman Br. 78-79.

Century does not deny that Grumman's purported delay in providing notice had no effect on Century's ability to fulfill its obligations under the policies. Nor does Century deny that a jury is generally entitled to consider the circumstances of the case in determining whether notice was timely given. *Jenkins*, 99 A.D.2d at 220.

Century nevertheless argues that a jury may not consider the pace of the NYSDEC proceeding in determining the reasonableness of Grumman's notice. Century Br. 47-48. A jury must be precluded from considering this evidence, in Century's view, because an insurer need not prove prejudice to establish a late-notice defense. *Id.* That is a non-sequitur. Grumman does not argue that prejudice to the insurer is *required* for notice to be late; Grumman argues only that

42

a jury may consider the totality of the circumstances, and that any prejudice to the insurer is relevant to—though not dispositive of—whether notice was timely. Century cites no case in which a court has precluded a jury from considering the lack of prejudice in deciding whether notice was timely, and Century ignores the cases expressly allowing consideration of this evidence. *See, e.g.*, *Romano v. St. Paul Fire & Marine Ins. Co.*, 65 A.D.2d 941, 942-43 (4th Dep't 1978) (jury must decide whether notice of lawsuit was timely where insurer "cannot claim to have been prejudiced by the 35-day interval"); *Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 82 (E.D.N.Y. 1993).

### D. A Jury Could Find That Century Waived Its Notice Defenses.

The district court conflated the concepts of waiver and estoppel, and incorrectly held that waiver requires a showing of prejudice. SA__[DE382_22, 25]. Century concedes this was error, but dismisses the error as "semantic." Century Br. 52 n.6. But the error was significant because it allowed the court to reject Grumman's waiver arguments without addressing their merits. Here, a jury could find that Century waived its late-notice defense with respect to the NYSDEC claim in two ways.

1. There is a genuine issue of material fact concerning whether Century waived its late-notice defense by selectively disclaiming coverage on other grounds. Grumman Br. 79-81. When an insurer has sufficient knowledge to deny

43

coverage on multiple grounds but refuses to provide coverage only on the ground that it cannot locate the insured's policies, the insurer waives the other defenses that it could have asserted. *See, e.g.*, *Estee Lauder Inc. v. OneBeacon Ins. Grp., LLC*, 62 A.D.3d 33, 38 (1st Dep't 2009) (citing *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95-96 (2d Cir. 2002)).

Century contends that this selective-waiver principle is inapplicable because Century "never actually disclaimed coverage based on missing policies"; it simply refused to make a coverage determination until the policies were found. Century Br. 50. A jury could view this distinction as meaningless and find that Century denied coverage of the NYSDEC claim by unreasonably delaying in making a coverage determination. *See Isadore Rosen*, 31 N.Y.2d at 348 (insurer's "unreasonable delay in acting" constitutes a "denial of liability" when the insurer "had notice of the claim"). Given that Century had notice of the NYSDEC claim by 1984, a jury could find that Century's two-decade delay in acting was unreasonable and hence a denial, and that Century waived its late-notice defense by failing to assert it when it denied coverage based on missing policies. *See Estee Lauder*, 62 A.D.3d at 38.

2. A jury could also infer waiver from Century's delay in asserting a late-notice defense. Century claims that this argument is foreclosed by *KeySpan Gas East Corp. v. Munich Reinsurance America, Inc.*, 23 N.Y.3d 583 (2014), but

44

Century misreads that decision. In *KeySpan*, the New York Court of Appeals held that a statutory waiver provision—which Grumman has never invoked—is inapplicable in insurance cases involving environmental property damage. *Id.* at 591. But *KeySpan* acknowledged that common-law waiver principles—the principles on which Grumman relies—are applicable, and that an insurer's "delay in giving notice of disclaimer should be considered under common-law waiver . . . principles." *Id.*

Century relies on *KeySpan*'s statement that waiver may not be based "simply on the passage of time." *Id.* at 590. But Grumman does not contend that a jury could find waiver based solely on the passage of time. Grumman contends that, under well-established common law principles, a jury could infer waiver from Century's failure to assert a late-notice defense after learning the facts necessary to assert the defense. *See, e.g.*, *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) ("[c]ontractual rights may be waived … by failure to act"); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 303 (2d. Cir. 1996) (waiver may be inferred from a party's "failure to act."). New York law is clear that a jury can find waiver where an insurer has sufficient knowledge to assert rights under the policy, but delays doing so. *See S. & E. Motor Hire Corp. v. New York Indem. Co.*, 255 N.Y. 69, 75 (1930) ("If the insurance company had known the facts upon which its rights depended, failure to assert them at the proper

45

time might permit the inference that it intentionally waived its rights."). *KeySpan* did not overrule these well-established common-law principles.[18]

## III. Grumman Is Entitled to Coverage under Travelers' Environmental Hazard Policies.

Travelers contends that coverage is unavailable for the NYSDEC claim under its environmental hazard ("EH") policies because Grumman did not report the claim during the 1983 policy period. Travelers Br. 92. But the EH policies make clear that coverage is available if the "extended reporting" period applies and Grumman provides notice during that period. SA__[DE382_28]. Because the "extended reporting" period applies and a jury could find that Grumman provided notice during this period, the district court erred in granting summary judgment for Travelers on these policies.

Travelers never asserts that the "Extended Reporting Provision" is unambiguous. For good reason: the provision could hardly be more confusing. Despite its title, the provision says nothing about allowing for extended reporting. Rather, the provision allows for claims made against Grumman after the policy period to be treated as though they were made during the policy period. SA__[DE382_28]. This back-dating provision, however, would be meaningless

---

[18] On remand, the Appellate Division did not issue a narrow ruling limited to the particular facts of the case. Century Br. 52. It applied the rule discussed above: "[t]he failure to assert a known policy defense may constitute a waiver." *Long Island Lighting Co.*, 123 A.D.3d at 404.

unless it is accompanied by an extended reporting period since claims must be made and noticed during the policy period or "extended reporting" period. *Id.*

Rather than interpreting the "Extended Reporting Provision" to be ineffectual, the district court read the provision as providing an extended reporting period for non-renewing or cancelled policyholders, but not for renewing policyholders. *Id.* at 30-31. But the policy language—which is silent on reporting claims—does not support this selective interpretation, which deprives a renewing policyholder from the benefit of an extended reporting period simply because it renewed the policy and thus did not reasonably believe it needed such extra coverage. Grumman Br. 83-86. At a minimum, the provision is ambiguous and thus must be construed in Grumman's favor. *See, e.g.*, *Lavanant v. Gen. Accident Ins. Co. of Am.*, 79 N.Y.2d 623, 629 (1992).[19]

The Eleventh Circuit reached this result in interpreting a similarly ambiguous "extended reporting" provision in *Cast Steel Products, Inc. v. Admiral Insurance Co.,* 348 F.3d 1298 (11th Cir. 2003). There, the court concluded that the "most reasonable interpretation" was that the reporting period was "automatically extend[ed]" for renewing policyholders, but at a minimum, the provision was

---

[19] Travelers' own underwriting manual confirms that this is the best reading of the provision. The manual states that the purchase of extended coverage "is available only when The Travelers cancels or will not renew the EH contract. *It is not needed otherwise, of course*." Grumman Br. 86-87 (emphasis added).

"clearly ambiguous on this point." *Id.* at 1304. Resolving the ambiguity in the policyholder's favor, the court held that coverage was available because it was "illogical and inequitable" to interpret two consecutive policies—which appear to provide "seamless" coverage—to have a gap that claims could fall through. *Id.* at 1301-04.

The district court's decision conflicts with *Cast Steel*. Travelers urges the Court to reject the Eleventh Circuit's view and follow *Checkrite Ltd. v. Illinois National Insurance Co.*, 95 F. Supp. 2d 180, 191-92 (S.D.N.Y. 2000). *Checkrite* does not support the district court's holding. The "extended reporting" provision in *Checkrite* was clearer than the provision in Travelers' policies; it was not limited to back-dating of claims, but also addressed extended reporting provisions. *Id.* at 192. Moreover, because the policyholder in *Checkrite* waited nine months before reporting the claim, the court expressly declined to address the situation presented here: where a claim is made at the end of one policy period and reported during the beginning of the next period. *Id.* at 193 n.9. The Eleventh Circuit distinguished *Checkrite* on this ground. *Cast Steel*, 348 F.3d at 1302 n.5. This Court should do the same.

## IV.  A Jury Could Find that Grumman Is Entitled to Coverage on the Town of Oyster Bay Claim.

The district court erred in ruling that Grumman forfeited coverage for the CERCLA lawsuit that the TOB filed in 2005. A jury could find that Grumman

48

provided timely notice to the insurers or that the insurers waived any late-notice defense.

### A. Whether Grumman Provided Timely Notice Cannot Be Decided as a Matter of Law.

Century argues that Grumman could not have provided notice of pollution at the Park—the occurrence underlying the TOB's CERCLA suit—by sending the PRP Letter to Century. Century Br. 54-55. According to Century, Grumman did not learn of the pollution until after 2000, and thus could not have given notice before it knew of the pollution.

That argument fails because the scope of a policyholder's notice is determined by the scope of the claim being noticed, not by the "extent of the harm" known when notice is provided. *Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 135 (2d Cir. 1998). Because the PRP Letter stated a claim that was sufficiently broad to cover pollution at the Park, Grumman's notice included that pollution. Under Century's contrary view, a policyholder would have to repeatedly re-notice the insurer—even if the insurer had refused to defend the claim—every time additional contamination is discovered at the same CERCLA site. Century cites no authority for that result.[20]

---

[20] Century misreads *Reynolds Metal*, which held only that a jury must decide whether the policyholder had a reasonable belief in non-liability based on its view that the claim was not covered under its policies. 259 A.D.2d at 201.

Century contends that Grumman provided late notice of claim by not timely disclosing the TOB's 2002 letter threatening a lawsuit under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* But Grumman does not seek coverage for that claim because the TOB never brought a RCRA suit. Grumman seeks coverage for the TOB's 2005 lawsuit under CERCLA. Century contends that the RCRA letter and the CERCLA suit are the same "claim," even though the TOB "revise[d] its legal theory." Century Br. 56. This argument fails because of the different remedies available to the TOB under the two statutes: monetary damages under CERCLA but only injunctive relief under RCRA. Grumman Br. 88. ██████████████████████ ███████████████████████████████████████████████████████

Grumman is entitled to coverage for the CERCLA claim so long as it provided timely notice of the lawsuit. The RCRA letter is a red herring.

Finally, the insurers incorrectly argue that Grumman's notice was late based on the six-week gap between its receipt of the TOB complaint and the notice to the insurers. The insurers again contend that timeliness of notice should be measured by the number of days that have passed, and that—because they need not establish prejudice to assert a late-notice defense—the prevailing circumstances should not be considered. Century Br. 57-58. But the timeliness of notice is a fact question for the jury where, as here, notice was provided before the answer was due, which

gave the insurers time to assume Grumman's defense had they wanted to do so. *Romano*, 65 A.D.2d at 944.

**B.    The Evidence Is Sufficient to Support a Finding of Waiver.**

A jury could find that the insurers waived their late-notice defenses for the TOB claim.  Although Grumman provided notice of the claim in 2005, and of the occurrences giving rise to that claim by 2007 at the latest, the insurers waited until 2012 to disclaim coverage on late-notice grounds.  Grumman Br. 90.  A jury could infer waiver from evidence that the insurers knew of the grounds for a late-notice defense by 2007, but did not act on that knowledge for years.  *Id.*

**V.    The Water Districts Did Not Assert Claims in the NYSDEC Action.**

The insurers do not dispute that the Aqua New York, South Farmingdale, and Massapequa water districts ("Water Districts") did not sue, nor even threaten to sue, Grumman.  Nor do they dispute that the purported Water District "claims" were attempts to influence the outcome of the NYSDEC administrative proceeding against Grumman.  The insurers nevertheless contend that the Water Districts asserted "claims" against Grumman because they expressed the view that Grumman  "would be 'financially liable for remediation of costs' at their wells." Travelers Br. 88; Century Br. 59-60.

This argument ignores a critical limitation on the meaning of a "claim" under the insurers' policies.  A statement that Grumman could be held liable by

some other party is insufficient to constitute a claim. Instead, to constitute a claim, a third party must assert that the policyholder "may be liable *to it* for damages." *Andy Warhol Found. for the Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215-16 (2d Cir. 1999) (emphasis added) (citation and quotation marks omitted).

Here, the Water Districts were not alleging that Grumman was liable to them; they were attempting to influence the remediation option NYSDEC would impose on Grumman. ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Because the Water Districts did not allege that Grumman could be held liable *to them*, their attempts to influence NYSDEC's decisionmaking process do not constitute "claims."[21]

---

[21] Travelers suggests that this Court could affirm on the ground that the Water Districts did not suffer property damage during the policy periods. Travelers Br. 90-91. This argument is not an alternative ground for affirmance. The question on appeal is whether the Water Districts asserted claims against Grumman. The "property damage" issue is irrelevant to that question, and applies only to the subsequent question whether, assuming claims were asserted, Grumman is entitled to coverage for them.

## CONCLUSION

The judgment should be reversed, and the case remanded for trial.

Respectfully submitted,

/s/  Georgia Kazakis
Georgia Kazakis
Mark W. Mosier
Elliott Schulder
Amit R. Vora
COVINGTON & BURLING LLP
850 Tenth St. NW
Washington, D.C. 20001-4956
(202) 662-6000

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,961 words, exclusive of the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman and 14 point font.


Dated: May 13, 2016                             /s/  Georgia Kazakis
                                                  Georgia Kazakis